Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana



FILED

Aug 15 2012, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| D.J., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1201-JV-29 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Scott Stowers, Magistrate
Cause No. 49D09-1109-JD-2257

**August 15, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

D.J. was adjudicated a delinquent child for committing acts that would constitute Class A misdemeanor intimidation if committed by an adult. D.J. now appeals and argues that the State presented insufficient evidence to support his delinquency adjudication. We affirm.

**Facts and Procedural History**

In 2011, James Smith ("Smith") regularly walked down Medford Avenue in Indianapolis, which took him past D.J.'s residence. On many occasions when D.J. saw Smith walking past his house, D.J. would harass Smith, calling him a "black bald-headed mother f***er[,]" and threatening to "kick his a**." Tr. p. 14. Smith would respond by telling D.J. to leave him alone.

At approximately 8:00 a.m. on August 31, 2011, when D.J. spotted Smith walking past his house again, D.J. ran out onto the porch and began cursing at Smith, again calling him a "black bald headed MF[.]" Tr. p. 11. Smith told D.J. to leave him alone, and D.J. responded, "You wait right there, I got something for you." Id. D.J. then ran into his house and re-emerged with a rifle. D.J. then pointed the rifle at Smith and shouted, "Yah, I got your a** now." Tr. p. 12. Smith then stepped behind a parked vehicle and called 911. When the police arrived, they took D.J. into custody and recovered the rifle from underneath a sofa in D.J.'s home.

As a result of these events, the State filed a petition alleging that D.J. was a delinquent child for committing acts that would constitute Class A misdemeanor intimidation if committed by an adult. A fact-finding hearing was conducted on December 21, 2011, at the conclusion of which the juvenile court entered a true finding

2

on the allegation of delinquency. The juvenile court subsequently entered a dispositional order placing D.J. on a suspended commitment to the Department of Correction and probation. D.J. now appeals his delinquency adjudication.

**Discussion and Decision**

D.J. argues that the evidence is insufficient to support his delinquency adjudication. When we review the sufficiency of the evidence to support a delinquency adjudication, we consider only the probative evidence and reasonable inferences supporting the adjudication. D.W. v. State, 903 N.E.2d 966, 968 (Ind. Ct. App. 2009), trans. denied. We do not assess witness credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. R.H. v. State, 916 N.E.2d 260, 267 (Ind. Ct. App. 2009) (citing Drane v. State, 867 N.E.2d 144, 146–47 (Ind. 2007)), trans. denied. We will affirm the adjudication unless no reasonable fact-finder could find the elements of the offense proven beyond a reasonable doubt. Id. It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. The evidence is sufficient if an inference may reasonably be drawn from it to support the adjudication. Id.

To support D.J.'s delinquency adjudication for acts that would constitute Class A misdemeanor intimidation if committed by an adult, the State was required to prove that D.J.: 1) communicated a threat; 2) to Smith; 3) with the intent that Smith be placed in fear of retaliation for a prior lawful act. See Ind. Code § 35-45-2-1; Appellant's App. p. 13. D.J. does not dispute that he communicated a threat to Smith; his sole argument on

3

appeal is that the State failed to prove that he did so with the intent that Smith be placed in fear of retaliation for a prior lawful act.

In support of this argument, D.J. cites Casey v. State, 676 N.E.2d 1069 (Ind. Ct. App. 1997). In Casey, the defendant argued with Kimberly and her friends at a bar, and later in the evening, Casey and his friends went to Kimberly's home. When Kimberly went outside to ask Casey to leave, he refused and told her, "Get inside bitch, you're next." Id. at 1071. Casey then asked one of his friends to get his gun and told Kimberly and her friends that he was going to kill all of them. Casey then hit one of Kimberly's friends in the head with a baseball bat and yelled to Kimberly that she was going to be next.

The State charged Casey with intimidation. At trial and on appeal, Casey argued that the State had not proven that Casey threatened Kimberly in order to place her in fear of retaliation for a prior lawful act. The State argued that Casey retaliated because Kimberly was engaged in the lawful acts of being a patron at a bar, and then being at her house. This court disagreed, holding that the relevant statute required the State "to prove that the victim had engaged in a prior act, which was not contrary to the law, and that the defendant intended to repay the victim for the prior lawful act." Id. at 1072. The court held further that "mere proof that the victim is engaged in an act which is not illegal at the time the threat is made is not sufficient." Id. In holding that Casey's intimidation conviction was not supported by sufficient evidence, this court noted that the charging information did not allege any specific prior lawful act and reasoned that the facts

4

presented did not demonstrate Casey's reasons for threatening Kimberly or indicate that he was doing so because of any specific prior act. Id. at 1073.

The facts of this case are readily distinguishable from those in Casey. First, the delinquency petition in this case alleged a specific, prior lawful act on Smith's part, namely, "having been walking on a public street." Appellant's App. p. 13. And under the facts and circumstances of this case, it was reasonable for the juvenile court, acting as the finder of fact, to infer that D.J.'s threats were designed to retaliate against Smith for his prior lawful act of walking down Medford Avenue. The evidence presented at the fact-finding hearing established that on many occasions prior to the date in question, D.J. had harassed and threatened Smith when he saw Smith walking down Medford Avenue and past D.J.'s home. When D.J. saw Smith walking past his house again on August 31, 2011, he retrieved a rifle from his home and threatened Smith with it. It is reasonable to infer from this evidence that D.J.'s threats were designed to retaliate against Smith for continuing to walk on Medford Avenue and past D.J.'s home despite D.J.'s previous threats of harm. We therefore conclude that the State presented sufficient evidence to support D.J.'s delinquency adjudication for committing acts that would constitute Class A misdemeanor intimidation if committed by an adult.

Affirmed.

VAIDIK, J., and BARNES, J., concur.